**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE CITY OF ROCHESTER | Case No. |
| Plaintiff, | |
| -against- | |
| | |
| SMITH & WESSON BRANDS, INC.; | |
| BERETTA U.S.A. CORP.; | |
| BUSHMASTER FIREARMS | |
| INDUSTRIES, INC.; COLT'S | |
| MANUFACTURING COMPANY, LLC; | **NOTICE OF REMOVAL** |
| GLOCK, INC.; HI POINT FIREARMS, | |
| A/K/A STRASSEL'S MACHINE, INC.; | |
| JA INDUSTRIES, LLC, F/K/A JENNINGS | |
| FIREARMS, F/K/A BRYCO ARMS, | |
| F/K/A JIMENEZ ARMS; KEL-TEC CNC | |
| INDUSTRIES, INC.; O.F. MOSSBERG & | |
| SONS, INCORPORATED; REMARMS, | |
| LLC, A/K/A REMINGTON FIREARMS; | |
| SAVAGE ARMS, INC.; SIG SAUER, | |
| INC.; SPRINGFIELD ARMORY, INC.; | |
| STURM, RUGER & CO., INC.; SCCY | |
| INDUSTRIES, LLC; TAURUS | |
| HOLDINGS, INC., A/K/A TAURUS | |
| INTERNATIONAL MANUFACTURING, | |
| INC.; JJE CAPITAL HOLDINGS, LLC; | |
| ARM OR ALLY, LLC; BROWNELLS, | |
| INC., A/K/A BROWNELLS OR BOB | |
| BROWNELL'S; GS PERFORMANCE, | |
| LLC, A/K/A GLOCKSTORE, A/K/A | |
| GSPC A/K/A DOUBLE DIAMOND; | |
| INDIE GUNS, LLC; JSD SUPPLY; KM | |
| TACTICAL; POLYMER80, INC.; | |
| PRIMARY ARMS, LLC; RANIER ARMS, | |
| LLC; SALVO TECHNOLOGIES, INC., | |
| A/K/A 80P BUILDER OR 80P FREEDOM | |
| CO.; ROCK SLIDE USA, LLC; | |
| BANGERS, L.P. N/K/A IRON | |
| VALLEY™ SUPPLY CO.; GUN CENTER | |
| INC., A/K/A GC WHOLESALE; RSR | |
| GROUP, INC.; VINTAGE FIREARMS, | |
| LLC; AND WOLCOTT GUNS INC., | |
| Defendants. | |

**TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NEW YORK:**

**PLEASE TAKE NOTICE** that Defendants Salvo Technologies, Inc., a/k/a 80P Builder or 80P Freedom Co. ("Salvo"); Brownells, Inc., a/k/a Brownells or Bob Brownell's ("Brownells"); Primary Arms, LLC ("Primary Arms"), Rock Slide USA, LLC, KM Tactical, Smith & Wesson Brands, Inc. ("Smith & Wesson"); and Wolcott Guns, Inc. (collectively, "Removing Defendants") hereby file this Notice of Removal of the above-captioned action from the Supreme Court of the State of New York, County of Monroe, Index No. E2022010581, pursuant to 28 U.S.C. §§ 1331, 1367, 1441, 1442, and 1446, on the basis of the facts set forth below:

1.      On December 21, 2022, Plaintiff the City of Rochester filed a Summons and Complaint in the Supreme Court of the State of New York, County of Monroe, Index No. E2022010581.  Copies of the Summons and Complaint are attached as Exhibits A and B.

2.      A letter from Plaintiff to the Clerk of the Supreme Court of the State of New York, County of Monroe, is attached as Exhibit C pursuant to Local Rule 81(a)(3).

3.      Affidavits of Service on Defendants Indie Guns, LLC; JSD Supply; Colt's Manufacturing Company, LLC; RemArms, LLC; Sig Sauer, Inc.; Sturm, Ruger & Co., Inc; RSR Group, Inc.; Glock, Inc.; Vintage Firearms, LLC; Smith & Wesson; Kel-Tec CNC Industries, Inc.; SCCY Industries, Inc.; Taurus Holdings, Inc.; Primary Arms; and Wolcott Guns, Inc. are attached as Exhibits D–J, L–M, and O–T pursuant to Local Rule 81(a)(3).

4.      Statements of Authorization for Electronic Filing filed by Plaintiff on January 17, 2023 and January 20, 2023, are attached as Exhibits K and N pursuant to Local Rule 81(a)(3).

5.      A copy of the Complaint was served on Defendant Primary Arms on January 13, 2023. By signature of its counsel below, Primary Arms joins in this Notice of Removal.

6.      A copy of the Complaint was served on Defendant Smith & Wesson on January 13, 2023. By signature of its counsel below, Smith & Wesson joins in this Notice of Removal.

7.      A copy of the Complaint was served on Defendant Wolcott Guns, Inc. on January 13, 2023. By signature of its counsel below, Wolcott Guns, Inc. joins in this Notice of Removal.

8.      A copy of the Complaint was served on Defendant Colt's Manufacturing Company, LLC on January 11, 2023. The written consent of Colt's Manufacturing Company, LLC to removal is attached as Exhibit W.

9.      A copy of the Complaint was served on Defendant Glock, Inc. on January 12, 2023. The written consent of Glock, Inc. to removal is attached as Exhibit X.

10.     A copy of the Complaint was served on Defendant O.F. Mossberg & Sons, Inc. on January 20, 2023. The written consent of O.F. Mossberg & Sons, Inc. to removal is attached as Exhibit X.

11.     A copy of the Complaint was served on Defendant Springfield Armory, LLC on January 17, 2023. The written consent of Springfield Armory, LLC to removal is attached as Exhibit X.

12.     A copy of the Complaint was served on Defendant Kel-Tec CNC Industries, Inc. on January 13, 2023. The written consent of Kel-Tec CNC Industries, Inc. to removal is attached as Exhibit X.

13.     A copy of the Complaint was served on Defendant SCCY Industries, Inc. on January 13, 2023. The written consent of SCCY Industries, Inc. to removal is attached as Exhibit X.

14.     A copy of the Complaint was served on Defendant RSR Group, Inc. on January 11, 2023. The written consent of RSR Group, Inc. to removal is attached as Exhibit X.

15.     A copy of the Complaint was served on Defendant RemArms, LLC a/k/a Remington Firearms on January 11, 2023. The written consent of RemArms, LLC to removal is attached as Exhibit Y.

16.     A copy of the Complaint was served on Defendant Sig Sauer, Inc. on January 11, 2023. The written consent of Sig Sauer, Inc. to removal is attached as Exhibit AA .

17.     A copy of the Complaint was served on Defendant Taurus Holdings, Inc. on January 13, 2023. The written consent of Taurus Holdings, Inc. to removal is attached as Exhibit BB.

18.     A copy of the Complaint was served on Defendant JJE Capital Holdings, LLC on January 19, 2023. The written consent of JJE Capital Holdings, LLC to removal is attached as Exhibit CC.

19.     A copy of the Complaint was served on Defendant Indie Guns, LLC on January 11, 2023. The written consent of Indie Guns, LLC to removal is attached as Exhibit FF.

20.     A copy of the Complaint was served on Defendant JSD Supply on January 11, 2023. The written consent of JSD Supply to removal is attached as Exhibit GG.

21.     A copy of the Complaint was served on Defendant Polymer80, Inc. on January 18, 2023. The written consent of Polymer80, Inc. to removal is attached as Exhibit HH.

22.     A copy of the Complaint was served on Defendant Vintage Firearms, LLC on January 12, 2023. The written consent of Vintage Firearms, LLC to removal is attached as Exhibit JJ.

23.     A copy of the Complaint was served on Defendant Sturm, Ruger & Co., Inc. on January 11, 2023. The written consent of Sturm, Ruger & Co., Inc. to removal is attached as Exhibit KK.

24.     Removing Defendants have exercised reasonable diligence in ascertaining which Defendants have been served with copies of the Complaint. On information and belief, no other Defendant has yet been served.

25.     The written consent of Beretta U.S.A. Corp to removal is attached as Exhibit U.

26.     The written consent of Bushmaster Firearms Industries, Inc. to removal is attached as Exhibit V.

27.     The written consent of Hi-Point Firearms, a/k/a Strassel's Machine, Inc. to removal is attached as Exhibit X.

28.     The written consent of Savage Arms, Inc. to removal is attached as Exhibit Z.

29.     The written consent of Arm or Ally to removal is attached as Exhibit DD.

30.     The written consent of GS Performance to removal is attached as Exhibit EE.

31.     The written consent of Ranier Arms, LLC; and Bangers, L.P. a/k/a Iron Valley Supply Co. to removal is attached as Exhibit II.

32.     This Notice is timely filed under 28 U.S.C. § 1446(b).

33.     This civil action is within this Court's original jurisdiction under 28 U.S.C. § 1331 because it raises a substantial federal question.

34.     This Court has supplemental jurisdiction over Plaintiff's claims that do not raise a substantial federal question under 28 U.S.C. § 1367.

### Substantial Federal Question Jurisdiction

35.     Among other things, this case involves claims related to multiple Removing Defendants' alleged advertising, manufacturing, selling, and shipping of unfinished frames and receivers into New York State—precursors to firearms the Complaint misleadingly dubs "ghost guns." Compl. ¶¶ 33–40, 511–536, 563, 573. The Complaint includes such claims against Salvo,

Brownells, Primary Arms, Rocks Slide USA, LLC, and KM Tactical (hereinafter the "Unfinished Frame Defendants").

36.     Plaintiff claims that in selling and marketing unfinished frames and receivers, the Unfinished Frame Defendants violated New York General Business Law § 898 (First Cause of Action), are responsible for a common law public nuisance (Second Cause of Action), and engaged in deceptive business practices under New York General Business Law §§ 349 and 350 (Third and Fourth Causes Action).

37.     This case is removable to federal court because Plaintiff's claims against the Unfinished Frame Defendants raise a substantial federal question and, therefore, provide original federal question jurisdiction under 28 U.S.C. § 1331.  *See* 28 U.S.C. § 1441(a).

38.     This Court has jurisdiction over claims that "arise[] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  As a general matter, such jurisdiction extends "only [to] those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27–28 (1983).

39.     The well-pleaded complaint rule has a "corollary . . . —the 'artful pleading' rule—pursuant to which plaintiff cannot avoid removal by declining to plead 'necessary federal questions.'"  *Romano v. Kazacos*, 609 F.3d 512, 518–19 (2d Cir. 2010).  One application of this rule is the "substantial federal question" doctrine, which recognizes that, even where a complaint does not plead a federal claim, "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312-13 (2005).  As the Supreme Court has explained, the substantial

federal question doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.*

40.     The Supreme Court has explained that under the substantial federal question doctrine, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).  As the United States District Court for the Southern District of New York recently ruled in a case involving substantially similar claims brought by the State of New York against the Unfinished Frame Defendants, removal of this case to federal court is proper under this test. *New York v. Arm or Ally, LLC*, No. 22-CV-6124, 2022 WL 17496413 (S.D.N.Y. Dec. 8, 2022).

41.     Although framed in the language of New York law, the Complaint raises a substantial federal question. *See, e.g.*, *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981) ("[C]ourts will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum." (internal quotation marks omitted)).

42.     "A single claim over which federal-question jurisdiction exists is sufficient to allow removal." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005).  Accordingly, Removing Defendants need only demonstrate that *one* of Plaintiff's claims grants this Court subject-matter jurisdiction properly to remove the case.  In this case, the Unfinished Frame Defendants have three alternative independent grounds for removal.

43.     The first basis for removal is that Plaintiff's First Cause of Action, for violation of New York General Business Law § 898, Compl. ¶¶ 511–536, raises a substantial question of

7

federal law that provides this Court with subject-matter jurisdiction under *Grable* and *Gunn*. Specifically, to prevail on its First Cause of Action against the Unfinished Frame Defendants, Plaintiff must demonstrate that the products that those Defendants sold, manufactured, and marketed are firearms or component parts of firearms under federal law.

44.     Whether the Unfinished Frame Defendants' products are firearms or component parts of firearms under federal law is necessarily raised by the First Cause of Action.

45.     New York General Business Law § 898 requires a tiered analysis to establish liability.   The statute applies to "gun industry member[s]" who, among other things, sell a "qualified product."  N.Y. Gen. Bus. L. § 898-b(1).  A "[q]ualified product" is defined as "hav[ing] the same meaning as defined in 15 U.S.C. section 7903(4)."  *Id.* § 898-a(6).  That section, in turn, provides that a "qualified product" "means a firearm (as defined in subparagraph (A) or (B) of section 921(a)(3) of Title 18), . . . or a component part of a firearm or ammunition, that has been shipped or transported in interstate or foreign commerce."  15 U.S.C. § 7903(4).  Finally, 18 U.S.C. § 921(a)(3)(A)–(B) provides that "[t]he term 'firearm' means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; [or] (B) the frame or receiver of any such weapon."   Consequently, in order to establish that  the conduct of the Unfinished Frame Defendants falls under New York General Business Law § 898-b(1), prevail on the claim, and obtain the requested abatement relief specifically tied to that claim against the Unfinished Frame Defendants, Plaintiff must demonstrate that the Unfinished Frame Defendants' products were either "firearms" or "component part[s]" of firearms under federal law.  A federal question is thus necessarily raised by Plaintiff's claim.

46.     Whether the Unfinished Frame Defendants' products are firearms or component parts of firearms under federal law is actually disputed.  Plaintiff's interpretation of the word

"firearm" under the Gun Control Act is contrary to the longstanding position of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").[1] The Unfinished Frame Defendants will also argue that unfinished frames and receivers are not "component part[s]" of firearms: A frame or receiver is a component part of a firearm; a hunk of metal or plastic that, with further machining, could be made into a frame or receiver is not.

47.     Whether the unfinished frames and receivers allegedly sold by the Unfinished Frame Defendants are firearms or component parts of firearms is a "substantial" question of federal law.  *Arm or Ally, LLC,* 2022 WL 17496413, at *6 (there is "no reasonable dispute" that the meanings of "firearm" and "component part" are important issues of federal law). The Supreme Court has explained that substantiality does not turn on whether the federal issue is significant to the particular parties in the immediate suit, but "looks instead to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260.  Whether unfinished frames and receivers are firearms under federal law is undoubtedly important to the federal system as a whole.  If Plaintiff prevails on its claim and a court agrees that unfinished frames and receivers are "firearms" under federal law, the necessary implication will be that ATF's longstanding position to the contrary was wrong. That ruling will have sweeping consequences for this important federal agency's ability to interpret the Gun Control Act and its regulatory flexibility.  Furthermore, if unfinished frames and receivers have always qualified as firearms under federal law, the upshot will be that every one of the tens of thousands of Americans who have purchased such products may have unwittingly violated federal law.  *See, e.g.*, 26 U.S.C. § 5861(c) (making it unlawful "for any person . . . to

---

[1] *See, e.g.*, ATF Ruling 2015-1, at 1, BUREAU OF ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES (Jan. 2, 2015), https://bit.ly/3PheBo4 (explaining that unfinished frames and receivers "have not yet reached a stage of manufacture in which they are classified as 'firearm frames or receivers' under the Gun Control Act of 1968 (GCA) and implementing regulations").

receive or possess a firearm made in violation of the provisions of this chapter"). A court's ruling on whether unfinished frames and receivers are "component parts" of firearms will also have important implications for the scope of immunity from suit under the Protection of Lawful Commerce in Arms Act ("PLCAA"). *See* 15 U.S.C. § 7903(4).

48.     Whether the Unfinished Frame Defendants' products are firearms under federal law is capable of resolution in this Court without disrupting the federal-state balance approved by Congress for many of the same reasons articulated above. *Arm or Ally, LLC,* 2022 WL 17496413, at *1 ("given the longstanding and strong federal interest in regulating the manufacture and sale of firearms in interstate commerce, the exercise of federal jurisdiction would not disrupt the federal-state balance approved by Congress"). The proper scope of the term "firearm" in the Gun Control Act will have sweeping consequences for the regulatory flexibility of ATF, the enforcement powers of federal prosecutors, and the potential liability of thousands of individuals who possess unfinished frames or receivers. *See, e.g.*, Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24652, 24656 (Apr. 26, 2022).  The federal courts—not the New York state courts—are the proper forum to determine the question that will have these consequential effects on the federal regime.

49.     Second, removal of this case to federal court is proper under the *Grable-Gunn* test for the additional reason that the same substantial, disputed federal question is also necessarily raised by Plaintiff's Third and Fourth Causes of Action, which assert that Defendants have engaged in "Deceptive Business Practices in Violation of" GBL §§ 349 and 350, as well as by Plaintiff seeking "treble damages, penalties and costs pursuant to General Business Law §§ 349(h) and 350-3(3)," Compl., Prayer for Relief ¶ iii.

50.     The only specific misrepresentations or deceptive practices identified in the Complaint that are attributed to the Unfinished Frame Defendants concern alleged misrepresentations about whether unfinished frames and receivers are firearms under *federal* law. *See* Compl. ¶ 336 (alleging that Salvo's website said "80P Freedom Co. does NOT sell firearms"); *id.* ¶ 380 (attributing this statement to Brownells: "[b]ecause they are not complete firearms, [unfinished frames] can be shipped straight to a customer's home without [a federal firearms license]").

51.     The only way Plaintiff can prevail on its Third and Fourth Causes of Action against the Unfinished Frame Defendants will be to show that they, either directly or by implication, misrepresented the federal legal requirements applicable to unfinished frames and receivers. And to show that the Unfinished Frame Defendants' statements about federal law were false or misleading, Plaintiff must establish that unfinished frames and receivers are firearms under federal law. Accordingly, the issue of whether unfinished frames and receivers are firearms under federal law is necessarily raised by Plaintiff's Third and Fourth Causes of Action, and this case is properly removable to this Court. *See Pennsylvania v. Think Fin., Inc.*, No. 14-CV-7139, 2015 WL 12838167, at *1 n.1 (E.D. Pa. May 29, 2015) (concluding that the state's misrepresentation claim necessarily raised a federal issue because in order to prove that challenged statements were misleading, the state would have to prove that statements inaccurately described status of federal law).

52.     Third, Plaintiff's Third and Fourth Causes of Action are based on the allegation that Defendants falsely represented "that it is legal for consumers to buy and possess" unfinished frames and receivers.  Compl. ¶¶ 563, 573.  One element that Plaintiff must prove to prevail on these causes of action is that the Unfinished Frame Defendants' alleged statements about the

lawfulness of purchase and possession of these products were false.  *See, e.g.*, *People v. Gen. Elec. Co.*, 302 A.D.2d 314, 314–15 (N.Y. App. Div. 2003).

53.     The Complaint alleges that unfinished frames and receivers are not legal to sell and possess under various statutes.  However, the United States Constitution is the supreme law of the land and preempts any contrary federal or state statute.  Therefore, if the Second Amendment to the United States Constitution establishes a right to sell and possess these products, the Unfinished Frame Defendants' alleged statements would not be false.  Accordingly, to prevail on a necessary element of Plaintiff's Third and Fourth Causes of Action against the Unfinished Frame Defendants, Plaintiff must establish that the Second Amendment confers no such right.

54.     To be sure, federal defenses are not necessarily raised on the face of a well-pleaded complaint and so cannot be the basis for removal under the *Grable-Gunn* test.  *See Louisville & Nashville R.R. Co. v. United States*, 282 U.S. 740 (1931).  But by suing the Unfinished Frame Defendants for allegedly making *misrepresentations* about the lawfulness of purchase and possession of unfinished frames and receivers, Plaintiff has made the ultimate status of these products under the Second Amendment an issue that it must prevail on as part of its affirmative case.  The Second Amendment issue is therefore necessarily raised by Plaintiff's Third and Fourth Causes of Action.

55.     Whether the Second Amendment protects a right to possess and sell unserialized, unfinished frames and receivers is actually disputed.  Based upon recent Supreme Court precedent, the Unfinished Frame Defendants will argue in this case that the Second Amendment confers such rights.  *See N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) (making history and tradition the touchstone for Second Amendment analysis and overturning contrary Second Circuit precedent); Joseph Greenlee, *The American Tradition of Self-Made Arms*, 54 St Mary's L.J.

(2022) (forthcoming), https://bit.ly/3uXZx6S (documenting history and tradition demonstrating "that Americans have long enjoyed and depended on the unregulated right to build arms since the colonial days").

56.     The status of unfinished frames and receivers under the Second Amendment is a substantial issue of federal law.  This issue has important implications for the constitutionality of federal statutes as well as ATF regulations and guidance.  Furthermore, adjudicating this important Second Amendment issue would not disrupt any federal-state balance approved by Congress.

### Federal Officer Removal

57.     This case also involves claims related to Defendants' alleged advertising, manufacturing, selling, and shipping of firearms into New York State.  Compl. ¶¶ 176–182, 191–198, 511–536, 537–559. Plaintiff has brought such claims against Defendants Smith & Wesson and Wolcott Guns, Inc. (collectively, "Manufacturer and Dealer Defendants"). Plaintiff claims that in manufacturing, selling, and marketing these products—in particular by failing to prevent their illegal use by criminals—Manufacturer and Dealer Defendants violated New York General Business Law § 898 (First Cause of Action), are responsible for a common law public nuisance (Second Cause of Action), and engaged in deceptive business practices under New York General Business Law §§ 349 and 350 (Third and Fourth Causes Action).

58.     This action may be removed by Manufacturer and Dealer Defendants under 28 U.S.C. § 1442. Manufacturer and Dealer Defendants are federally licensed firearms manufacturers and dealers who assist and participate in the enforcement of federal firearms regulations.  *See* 18 U.S.C. § 923(a); 27 C.F.R. § 478.41.  As a result of their enforcement responsibilities, Manufacturer and Dealer Defendants "act[] under" federal "officer[s]," and the present lawsuit "relat[es] to" various "act[s] under color of [federal] office."  28 U.S.C. § 1442(a)(1).

Manufacturer and Dealer Defendants also possess at least one "colorable federal defense," *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 138 (2d Cir. 2008)—namely federal preemption under the PLCAA, 15 U.S.C. §§ 7901–7903.

59.     To remove an action to federal court under § 1442, "a defendant who is not himself a federal officer must demonstrate that (1) the defendant is a 'person' under the statute, (2) the defendant acted 'under color of federal office,' and (3) the defendant has a colorable federal defense." *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014) (internal quotation marks omitted).  The officer removal statute "as a whole must be liberally construed." *Isaacson*, 517 F.3d at 136.

60.     Manufacturer and Dealer Defendants satisfy each requirement.  First, they are corporations, and "it is clear that corporations are 'persons' within the meaning of [§ 1442]." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007).

61.     Second, Manufacturer and Dealer Defendants possess a colorable federal defense. "To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." *Isaacson*, 517 F.3d at 139 (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).  Accordingly, "[c]ourts have imposed few limitations on what qualifies as a colorable federal defense." *Id.* at 138.

62.     Congress provided a federal defense in the PLCAA, which dictates that a "qualified civil liability action may not be brought in any Federal or State court."  15 U.S.C. § 7902(a).  Plaintiff's suit qualifies:  It is "a civil action … brought by any person against a manufacturer or seller of [firearms], … for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a [firearm] by the person or a third party." *Id.* § 7903(5)(A).  And Plaintiff's suit does not fit any of

the enumerated exceptions to that broad definition.  *See id.* § 7903(5)(A)(i)–(vi).  It does not

concern a criminal transferor; nor does it allege negligent entrustment, negligence per se, breach

of contract or warranty, or a design defect.  *See id.*  Moreover, it falls outside the so-called

"predicate exception" for knowing, injurious violations of state statutes that impose regulations on

the firearms industry.  *Id.* § 7903(5)(A)(iii); *see, e.g.*, *City of N.Y. v. Beretta U.S.A. Corp.*, 524

F.3d 384, 402 (2d Cir. 2008) (holding that this exception applies only where a covered business

knowingly violates a statute that "clearly can be said to regulate" the "sale or marketing" of

firearms and differentiating New York's criminal nuisance statute); *Ileto v. Glock, Inc.*, 565 F.3d

1126, 1136 (9th Cir. 2009) (similar).

  63. Third, Manufacturer and Dealer Defendants also "act[] under" federal officers by

participating in and assisting with the enforcement of federal firearms regulations, and Plaintiff's

suit "relat[es] to" various "act[s] under color of [federal] office."  28 U.S.C. § 1442(a)(1).  A court

must give this language "a broad construction—particularly with respect to private parties who

claim to be 'acting under' a federal officer."  *Agyin v. Razmzan*, 986 F.3d 168, 175 (2d Cir. 2021).

And it "must credit the defendants' theory of the case when evaluating the relationship between

the defendants' actions and the federal officer."  *Id.* (internal quotation marks and alteration

omitted).  An entity that makes "effort[s] to *assist*, or to help *carry out*, the duties or tasks of the

federal superior" satisfies this requirement.  *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152

(2007) (emphasis in original).  Such a defendant "work[s] hand-in-hand with the federal

government to achieve a task that furthers an end of the federal government."  *Agyin*, 986 F.3d at

176–77.  Put differently, it "perform[s] a job that … the federal government would [otherwise]

have had to perform itself."  *Id.* at 176.

64.    Federal firearm licensees, including Manufacturer and Dealer Defendants, work in "partnership[]" with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) to facilitate federal crime-prevention and law-enforcement efforts.  *See, e.g.*, *Open Letter to All Federal Firearms Licensees*, BUREAU OF ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES (Jan. 14, 2004), https://www.atf.gov/firearms/docs/open-letter/all-ffls-jan2004-open-letter-importance-partnerships-between-atf-and/download.  To shoulder "joint responsibilities" of the industry and the federal government, *id.*, Defendants keep detailed records of importation, production, shipment, receipt, and sale, *see* 18 U.S.C. § 923(g)(1); 27 C.F.R. §§ 478.121–478.134.  They report the theft, loss, and recovery of firearms to ATF and alert the agency to multiple firearm purchases by a single buyer.  *See* 27 C.F.R. §§ 478.39a, 478.126a.  And they directly assist federal officers by helping to trace weapons recovered by law enforcement.  *See* 18 U.S.C. § 923(g)(1)(B); *How ATF Traces Firearms*, BUREAU OF ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES (Aug. 17, 2018),  https://www.atf.gov/resource-center/infographics/how-atf-traces-firearms;  *Fact Sheet - National Tracing Center*, BUREAU OF ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES (Sept. 2021), https://www.atf.gov/resource-center/fact-sheet/fact-sheet-national-tracing-center.    Indeed, Plaintiff acknowledges that "Defendants are an integral part of the tracing system" because they perform tracing functions for ATF upon request.  Compl. ¶ 176.

65.    In at least these ways, Manufacturer and Dealer Defendants go beyond mere passive compliance and actively "assist [ATF] with accomplishing its duties or tasks."  *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1143 (11th Cir. 2017).  Indeed, given this range of cooperative responsibilities, Manufacturer and Dealer Defendants exercise a degree of crime-prevention and law-enforcement authority on ATF's behalf.  As the Supreme Court has repeatedly explained, private licensees are the "principal agent[s] of federal enforcement" of firearm statutes.

*Huddleston v. United States*, 415 U.S. 814, 824 (1974) (describing Congress's decision to "channel[]" "[c]ommerce in firearms … through federally licensed importers, manufacturers, and dealers"); *Abramski v. United States*, 573 U.S. 169, 186 (2014) (describing licensed dealers as the "principal agent[s] of federal enforcement in restricting criminals' access to firearms") (internal quotation marks and alteration omitted).  Moreover, Manufacturer and Dealer Defendants are not merely regulated by the federal government incidental to doing business; they cannot engage in their chosen business *at all* without applying for and obtaining a federal license.  *See* 18 U.S.C. § 923(a); 27 C.F.R. §§ 478.41, 478.71.  And once they do, licensees are required to work "hand-in-hand" with ATF to "achieve" federal objectives through recordkeeping, reporting, and law-enforcement assistance—actions the "government would [otherwise] have had to perform itself." *Agyin*, 986 F.3d at 176–77.  In short, Manufacturer and Dealer Defendants shoulder federal enforcement responsibilities and share a "special relationship" with the federal government that justifies removal under § 1442(a).  *Watson*, 551 U.S. at 157.

66.     Finally, Plaintiff's suit plainly "relat[es] to . . . act[s] under color of [federal] office."  28 U.S.C. § 1442(a)(1).  "The hurdle erected by this requirement is quite low," and a private defendant clears it by showing a nexus between "the acts for which they are being sued" and "what they were asked to do by the Government."  *Isaacson*, 517 F.3d at 137.  Here, that nexus is clear on the face of the Complaint.  Plaintiff's claims rest on Manufacturer and Dealer Defendants' alleged acts and omissions surrounding the marketing and sale of firearms.  For example, Plaintiff's First Cause of Action asserts that Defendants have violated New York General Business Law § 898-b(2) by "fail[ing] to use reasonable controls to prevent" firearms from being "possessed" or "used … unlawfully."  Compl. ¶ 528. But Manufacturer and Dealer Defendants are already obliged, as part of their "partnership" with the ATF, to impose a host of controls for that

very preventive purpose.  Thus, Plaintiffs seek relief in part for actions Manufacturer and Dealer Defendants took (and declined to take) while fulfilling their duties as federal licensees, in accordance with the directives of federal officers. The factual "circumstances" that allegedly "gave rise to … liability" plainly "encompass" Manufacturer and Dealer Defendants' close working relationship with the federal government. *Jefferson Cnty. v. Acker*, 527 U.S. 423, 433 (1999).

## Conclusion

67.    This action may be removed by Defendants pursuant to 28 U.S.C. §§ 1441 and 1442.  Removal to the United States District Court for the Western District of New York is proper because the Western District of New York embraces Monroe County.

68.    Promptly upon the filing of this Notice of Removal, Removing Defendants shall file a copy with the Clerk of the Monroe County Supreme Court and serve a copy upon Plaintiff and the Defendants who have been served with copies of the Complaint.

**WHEREFORE**, Removing Defendants hereby remove this Action from Monroe County Supreme Court to this Court.

Dated: January 24, 2023                         Respectfully Submitted,

                                                /s/ Thomas E. Liptak

                                                Thomas E. Liptak
                                                Alexander J. Douglas
                                                KENNEY SHELTON LIPTAK NOWAK LLP
                                                The Calumet Building
                                                233 Franklin Street
                                                Buffalo, New York 14202
                                                Phone: (716) 853-3801

                                                Andrew E. Lelling*
                                                100 High Street
                                                JONES DAY
                                                Boston, MA  02110-1781
                                                Phone: (617) 449-6856

Noel J. Francisco*
Anthony J. Dick*
Harry Graver*
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939

*Attorneys for Smith & Wesson Brands, Inc.*

David H. Thompson, Esq.*
Brian W. Barnes, Esq.*
COOPER & KIRK PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
Phone: (202) 220-9600

*Attorneys for Defendants Salvo Technologies, Inc.,
a/k/a 80P Builder or 80P Freedom Co.; Brownells,
Inc., a/k/a Brownells or Bob Brownell's; Primary
Arms, LLC, and Rock Slide USA, LLC*

Jason H. Cowley
Eric Snyder
Matthew D. Fender
MCGUIREWOODS LLP
1251 Avenue of the Americas, 20th Floor
New York, New York  10020
Telephone:     (212) 548-2138
Facsimile:     (212) 715-2311
jcowley@mcguirewoods.com

*Attorneys for Defendant KM Tactical*

Christopher M. Chiafullo
THE CHIAFULLO GROUP, LLC
244 Fifth Avenue, Suite 1960
New York, NY 10001
Telephone: (908) 741-8531
cchiafullo@chiafullogroup.com

*Attorneys for Defendant Wolcott Guns, Inc.*

\* Application for leave to appear *pro hac vice forthcoming*