UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE CITY OF ROCHESTER,<br><br>       *Plaintiff*,<br><br>    v.<br><br>SMITH & WESSON BRANDS, INC.;<br>GLOCK, INC.; STURM, RUGER & CO.,<br>INC.; and TAURUS INTERNATIONAL<br>MANUFACTURING, INC.,<br><br>       *Defendants*. | Case No. 6:23-cv-6061-FPG |

| | |
|---|---|
| THE CITY OF BUFFALO,<br><br>       *Plaintiff*,<br><br>    v.<br><br>SMITH & WESSON BRANDS, INC.;<br>GLOCK, INC.; STURM, RUGER & CO.,<br>INC.; and TAURUS INTERNATIONAL<br>MANUFACTURING, INC.,<br><br>       *Defendants*. | Case No. 1:23-cv-66-FPG |

**[PROPOSED] BRIEF FOR STATES OF NEW YORK, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, HAWAI'I, ILLINOIS, MAINE, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEVADA, NEW MEXICO, OREGON, RHODE ISLAND, VERMONT, VIRGINIA, AND WASHINGTON AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTERESTS OF AMICI STATES ..................................................................................... 1

ARGUMENT ........................................................................................................................ 3

    I.    CONGRESS INTENDED TO PRESERVE STATES' AUTHORITY TO
           REGULATE GUN INDUSTRY PARTICIPANTS IN ENACTING THE
           PROTECTION OF LAWFUL COMMERCE IN ARMS ACT (PLCAA). ....................................... 3

          A.    PLCAA's Plain Text and Congress's Express Findings
                   Demonstrate the Narrow Scope of PLCAA's Bar on
                   Actions Against Gun Industry Participants. ................................................................ 3

          B.    PLCAA's Legislative History Confirms the Narrow Scope of
                   Its Bar on Actions Against Gun Industry Participants. .............................................. 6

    II.    DEFENDANTS' EXPANSIVE INTERPRETATION OF PLCAA'S BAR WOULD
           IMPROPERLY INTERFERE WITH STATES' AUTHORITY—EXPRESSLY
           RECOGNIZED BY PLCAA—TO REGULATE GUN INDUSTRY
           PARTICIPANTS THROUGH LEGISLATION. ........................................................................... 8

CONCLUSION ..................................................................................................................... 12

i

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Bond v. United States,*
    572 U.S. 844 (2014) ..................................................................................... 8

*Chamber of Com. of U.S. v. Whiting,*
    563 U.S. 582 (2011) ..................................................................................... 8

*City of New York v. Beretta U.S.A. Corp.,*
    524 F.3d 384 (2d Cir. 2008)......................................................................... 5

*Medtronic, Inc. v. Lohr,*
    518 U.S. 470 (1996) ..................................................................................... 8

*National Shooting Sports Found. v. James,*
    144 F.4th 98 (2d Cir. 2025) .......................................................... 1, 5, 9-11

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos,*
    605 U.S. 280 (2025) ..................................................................................... 5

*Soto v. Bushmaster Firearms Int'l,*
    331 Conn. 53 (2019).................................................................................... 6

*United States v. Lopez,*
    514 U.S. 549 (1995) ..................................................................................... 8

**Federal Statutes**

15 U.S.C.
    § 7901...............................................................................................3-4, 9-10
    § 7902 ........................................................................................................... 3
    § 7903................................................................................................3-5, 9-11

47 U.S.C. § 414................................................................................................ 11

**State Statutes**

General Business Law
    § 898-a......................................................................................................... 10
    § 898-b......................................................................................................... 10

**Miscellaneous Authorities**

151 Cong. Rec. 17371 (July 26, 2005) .................................................................. 6-7, 9

151 Cong. Rec. 18084 (July 27, 2005) ...................................................................... 6-7

H.R. Rep. No. 108-59 (2003) ..................................................................................... 7

*Protection of Lawful Commerce in Arms Act: Hearing on H.R. 800 Before the
    Subcomm. on Com. & Admin. L. of the H. Comm. on the Judiciary*,
    109th Cong. 41 (Mar. 15, 2005)............................................................................ 7

## INTERESTS OF AMICI STATES

Plaintiffs, the cities of Rochester and Buffalo, assert claims against four firearms manufacturers under New York's gun-related public nuisance statute, General Business Law § 898-b(2). New York's Legislature enacted this statute in 2021 to promote responsible business practices and provide a remedy for harm inflicted by the misconduct of gun industry members. Among other things, the statute requires gun industry members to establish and use reasonable controls and procedures to prevent the misuse of their products within the State. The Second Circuit upheld the validity of the statute against a facial challenge brought by several of the gun industry members that are defendants in this action. *National Shooting Sports Found. v. James*, 144 F.4th 98, 103 (2d Cir. 2025), *pet. for cert. docketed*, No. 25-1026 (U.S. Feb. 26, 2026). As the Second Circuit explained, the statute has numerous applications that do not fall afoul of the federal Protection of Lawful Commerce in Arms Act (PLCAA), 15 U.S.C. §§ 7901-7903. *See id.* at 108-13.

Defendants now move to dismiss the actions brought by Rochester and Buffalo, arguing in part, that plaintiffs' claims are barred by PLCAA, which defendants interpret to have near complete preemptive effect.[1] The States of New York, California, Colorado, Connecticut, Delaware, Hawai'i, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Mexico, Oregon, Rhode Island, Vermont, Virginia, and Washington, submit this brief as amici curiae in support of plaintiffs and in furtherance of the strong sovereign interest in preserving statutory remedies intended to deter and remediate misconduct by gun manufacturers and sellers which inflicts harm on our residents. Amici States have exercised their police powers to promote safety in the use of firearms within their borders by enacting laws and implementing regulations that govern the possession and

---

[1] Although the motions to dismiss present several different issues, this amicus brief focuses on defendants' unduly expansive reading of PLCAA.

carrying of firearms and encourage responsible gun manufacturing and sales practices.[2] Amici maintain that it is critically important to provide civil remedies to redress harms caused by gun industry members.

Contrary to the contentions of defendants and their amici, Congress did not intend for PLCAA to provide broad and sweeping immunity to firearms manufacturers and sellers. PLCAA's plain text makes clear that Congress intended to bar actions that seek to impose liability on firearms manufacturers and sellers for harms caused solely by third parties, but not for harms caused by gun industry participants themselves. PLCAA's express exceptions preserve actions against firearms manufacturers and sellers arising from their violations of predicate state laws, such as General Business Law § 898-b(2). Moreover, PLCAA's legislative history reinforces Congress's intent to impose a limited bar that preserves liability for gun industry participants based on their own misconduct and violations of federal and state laws.

The amici States have a strong interest in ensuring that, in construing PLCAA, courts adhere to PLCAA's text and Congress's goal in imposing a narrow bar on civil actions against firearms manufacturers and sellers that preserves States' police power to regulate gun industry participants by statute. The broad interpretation of PLCAA's bar advanced by defendants would improperly displace a traditional area of state authority despite the lack of a clear and manifest showing of congressional intent to achieve such an end.

---

[2] Several amici States have enacted or are enforcing firearms-industry accountability frameworks similar to the one at issue here. *See* Pl. City of Rochester's Mem. of Law in Opp. to Defs.' Joint Mot. to Dismiss First Am. Compl. at 2 n.1 (May 22, 2026) (citing statutes), ECF No. 182.

## ARGUMENT

**I.    CONGRESS INTENDED TO PRESERVE STATES' AUTHORITY TO REGULATE GUN INDUSTRY PARTICIPANTS IN ENACTING THE PROTECTION OF LAWFUL COMMERCE IN ARMS ACT (PLCAA).**

**A.    PLCAA's Plain Text and Congress's Express Findings Demonstrate the Narrow Scope of PLCAA's Bar on Actions Against Gun Industry Participants.**

In 2005, Congress enacted the Protection of Lawful Commerce in Arms Act (PLCAA) in response to a series of lawsuits filed by individuals, cities, and States that sought relief under various common law theories for harms caused by gun violence. 15 U.S.C. § 7901(a)-(b) (congressional findings and purposes). Through PLCAA, Congress established a statutory framework limiting, but not eliminating, liability of manufacturers and sellers for harms resulting from the unlawful use of "qualified products," defined as any firearms, ammunition, or component parts that were shipped in interstate or foreign commerce. *See id.* § 7903(4).

PLCAA prohibits the filing of federal or state civil actions against gun industry members for harms "resulting from the criminal or unlawful misuse of a qualified product," subject to several enumerated exceptions. *Id.* §§ 7902(a), 7903(5)(A). Congress's express findings and purposes repeatedly note that this bar is limited to actions that seek to impose liability on firearms manufacturers and sellers for harms caused solely by third parties, but not for harms caused by gun industry participants themselves. Congress found that "[t]he possibility of imposing liability on an entire industry for harm that is *solely* caused by others is an abuse of the legal system" that "erodes public confidence in our Nation's laws." *Id.* § 7901(a)(6) (emphasis added). And Congress further stated that the principal purpose of PLCAA was to bar actions against gun industry members "for the harm *solely* caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended." *Id.* § 7901(b)(1) (emphasis added).

3

In enacting PLCAA, Congress sought to ensure that regulation of the gun industry would be reserved to federal and state legislatures rather than to the respective judiciaries. Specifically, Congress was concerned that the then-pending suits were improper "attempt[s] to use the judicial branch to circumvent the Legislative branch of government," *id.* § 7901(a)(8), and permitted "a maverick judicial officer or petit jury" to hold the "entire industry" liable based on an "expansion of the common law" that was not supported by legislative action, *id.* § 7901(a)(6)-(7). Congress therefore stressed that the authority to "expand civil liability" for the gun industry belongs, in the first instance, to Congress and "the legislatures of the several States." *Id.* § 7901(a)(7).

PLCAA's exceptions make clear the limited scope of PLCAA's bar and Congress's intent to preserve statutory causes of action, including those provided by state statutes regulating the firearms industry. For example, PLCAA permits suits against manufacturers and sellers that transfer firearms or ammunition with at least reasonable cause to believe that the product will be used to commit a felony (or other listed crime), either under a federal criminal statute (18 U.S.C. § 924(h)) or under "a comparable or identical State felony law, by a party directly harmed by the conduct of which the transferee is so convicted." 15 U.S.C. § 7903(5)(A)(i). PLCAA also permits suits against sellers based on a "negligence per se" theory of tort liability, which requires a violation of a relevant federal or state statute. *See id.* § 7903(5)(A)(ii). And PLCAA permits the U.S. Attorney General to sue for violations of the Gun Control Act of 1968, 18 U.S.C. § 921 et seq., or the National Firearms Act of 1934, 26 U.S.C. § 5801 et seq. *See* 15 U.S.C. § 7903(5)(A)(vi).

As relevant here, PLCAA specifically respects the primary role of federal and state legislatures by permitting suits against gun industry members that have knowingly violated a predicate "State or Federal statute applicable to the sale or marketing of [a qualified] product," where such violations are a proximate cause of a plaintiff's injury. *Id.* § 7903(5)(A)(iii). PLCAA's predicate exception

4

provides several illustrative examples of conduct that might give rise to such a suit, including: a false entry or improper omission in "any record required to be kept under Federal or State law"; a materially "false or fictitious oral or written statement" as to whether a sale is lawful under federal or state law; and a sale to persons who are prohibited from possessing a firearm or ammunition under federal law. *Id.* § 7903(5)(A)(iii).

PLCAA's plain text and Congress's express findings thus show that plaintiffs may seek relief for harms arising from violations of duly enacted state laws regulating the firearms industry. As the Supreme Court recently explained, "the predicate violation opens a path to making a gun manufacturer civilly liable for the way a third party has used the weapon it made." *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 286 (2025).[3] The Second Circuit has held that the predicate exception's reference to statutes "applicable to the sale or marketing" of firearms preserves actions arising from violations of any of three types of statutes: those "(a) that expressly regulate firearms, or (b) that courts have applied to the sale and marketing of firearms," or (c) "that do not expressly regulate firearms but that clearly can be said to implicate the purchase and sale of firearms." *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 404 (2d Cir. 2008); *accord National Shooting Sports Found.*, 144 F.4th at 110. And the Second Circuit has expressly recognized that General Business Law §§ 898-a to 898-e—a ground for relief here—may qualify as a statute "applicable to the sale or marketing" of firearms under PLCAA's predicate exception. *National Shooting Sports Found.*, 144 F.4th at 111.

---

[3] *Smith & Wesson* reinforces the availability of PLCAA's predicate exception where, as here, plaintiffs proceed under a qualifying state statute. The Supreme Court did not hold that PLCAA bars claims predicated on state firearms-industry accountability laws. It held only that Mexico had failed to plausibly allege aiding-and-abetting liability because its complaint did not tie defendants' conduct to particular statutory violations or plead the conscious and culpable assistance required under federal law. *Smith & Wesson*, 605 U.S. at 291.

**B.**     **PLCAA's Legislative History Confirms the Narrow Scope**
           **of Its Bar on Actions Against Gun Industry Participants.**

The limited scope of PLCAA's bar on actions against gun industry participants is also reinforced by the legislative history. Senator Larry Craig—PLCAA's principal sponsor—emphasized PLCAA's "limited nature," explaining that it "is not a gun industry immunity bill" and does not absolve gun manufacturers and sellers from liability for their own misconduct. 151 Cong. Rec. 18084 (July 27, 2005). Instead, the law "only stops one extremely narrow category of lawsuits": those lawsuits that "attempt to force the gun industry to pay for the crimes of third parties over whom they have no control."[4] *Id.* Senator Jeff Sessions similarly explained that PLCAA's bar is "incredibly narrow" and gun industry participants "are still responsible for their own negligent or criminal conduct" and must comply with state and federal laws. 151 Cong. Rec. 17371 (July 26, 2005). As the Connecticut Supreme Court has explained, PLCAA's legislative history shows that Congress's "primary concern was that liability should not be imposed in situations in which the producer or distributor of a consumer product bears absolutely no responsibility for the misuse of that product in the commission of a crime." *Soto v. Bushmaster Firearms Int'l*, 331 Conn. 53, 149 (2019).

Congress intended PLCAA's exceptions to clarify the narrow scope of PLCAA's bar. To achieve that end, PLCAA's exceptions list "specific kinds of lawsuits that are not prohibited." 151 Cong. Rec. at 18085 (statement of Sen. Larry Craig). As its sponsors emphasized, PLCAA's exceptions confirm that the statute "does not shield" manufacturers and sellers "if in any way they violate State or Federal law." *Id.* at 18086 (statement of Sen. Craig); *see id.* at 18059 (statement of Sen.

---

[4] Senator Lindsey Graham also stated that PLCAA merely prohibits actions that seek to "*create* a duty on the part of sellers and manufacturers for an event that they can't control, which is the intentional misuse of a weapon to commit a crime." 151 Cong. Rec. at 18920 (emphasis added).

6

Jeff Sessions) (confirming that the gun industry must "operate entirely within the Federal and State laws"); *id.* at 18073 (statement of Sen. Orrin Hatch) (same).

PLCAA's principal sponsor also made clear that Congress sought to protect state sovereignty when it was exercised by state legislatures, and not when exercised by state courts. 151 Cong. Rec. at 18096 (statement of Sen. Craig). Indeed, a common thread in PLCAA's legislative history is references to the importance of the States' consideration of these issues in a democratic manner, H.R. Rep. No. 108-59, at 54 (2003), through "the legislative process," 151 Cong. Rec. at 18096 (statement of Sen. Craig). For example, Senator Sessions stated that PLCAA responded to lawsuits that were intended "to make an end run around the legislative system" and "get an activist judge" to impose reforms that had not been achieved through the legislative process. 151 Cong. Rec. at 17371. Senator Orrin Hatch explained the problem that PLCAA was intended to resolve in similar terms: "These abusive gun liability actions usurp the authority of the Congress and State legislators." 151 Cong. Rec. at 18073. Indeed, several gun industry members urged Congress at the time that policy choices in this area "are for Congress and state legislatures to make," and that under PLCAA "[a]ny company or dealer that breaks the law can be sued." *Protection of Lawful Commerce in Arms Act: Hearing on H.R. 800 Before the Subcomm. on Com. & Admin. L. of the H. Comm. on the Judiciary*, 109th Cong. 41 (Mar. 15, 2005) (statement of National Shooting Sports Foundation, Inc.).

7

**II.    DEFENDANTS' EXPANSIVE INTERPRETATION OF PLCAA'S BAR WOULD IMPROPERLY INTERFERE WITH STATES' AUTHORITY—EXPRESSLY RECOGNIZED BY PLCAA—TO REGULATE GUN INDUSTRY PARTICIPANTS THROUGH LEGISLATION.**

Contrary to PLCAA's text and legislative history, defendants and their amici claim that PLCAA provides gun industry participants with broad, "robust" immunity from suit subject to only "narrow" exceptions. *See, e.g.*, Mem. in Supp. of Defs.' Joint Mot. to Dismiss First Am. Compls. for Failure to State a Claim Under Rule 12(b)(6) at 1 (Mar. 23, 2026), ECF No. 176-1; Br. of *Amici Curiae* State of Montana & 22 Additional States in Supp. of Defs.' Mot. to Dismiss at 7-8 (Mar. 30, 2026), ECF No. 178-3. This Court should reject this extremely broad reading of PLCAA, which is inconsistent with its text, purpose, and history and would impinge on the States' authority—expressly recognized by PLCAA—to regulate the sale and marketing of firearms through legislation.

As an initial matter, the reading of PLCAA advanced by defendants and their amici fails to acknowledge the general presumption that Congress does not intend to displace state law. In our federal system, the "States have broad authority to enact legislation for the public good." *Bond v. United States*, 572 U.S. 844, 854 (2014). In contrast to the federal government's enumerated and defined powers, the States' powers "'are numerous and indefinite.'" *United States v. Lopez*, 514 U.S. 549, 552 (1995) (quoting *The Federalist No.* 45, at 292-93 (James Madison) (Clinton Rossiter ed., 1961)). "[B]ecause the States are independent sovereigns in our federal system," courts must presume that Congress has intended to preserve state law—a presumption that is overcome only where Congress demonstrates a "clear and manifest" preemptive purpose. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (quotation marks omitted). And where, as here, "Congress specifically preserve[s]" authority for States to regulate in an area, "it stands to reason that Congress did not intend to prevent the States from using appropriate tools to exercise that authority." *See Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 600-01 (2011) (plurality op.).

Defendants and their amici fall far short of showing that Congress had a clear and manifest purpose to bestow sweeping immunity on gun industry participants at the expense of the States' regulatory authority. In fact, as noted above (at 3-5), PLCAA's predicate exception reflects Congress's intent to vest the primary authority to regulate the gun industry in federal and state legislatures acting in their representative capacities (as opposed to federal and state judiciaries acting in their common law capacities). *See* 15 U.S.C. § 7901(a)(7)-(8). And the legislative history repeatedly shows that Congress intended PLCAA's bar—not its exceptions—to be "incredibly narrow." 151 Cong. Rec. at 17371. See *supra* at 6-7. As the Second Circuit has already concluded in holding that violations of General Business Law §§ 898-a to 898-e may give rise to actions against gun industry participants consistent with PLCAA's predicate exception, "PLCAA's text and history . . . do not clearly establish that the statute's aim was to prevent state legislatures from creating avenues to hold gun manufacturers liable for downstream harms caused by their products." *National Shooting Sports Found.*, 144 F.4th at 109-10.

Defendants and their amici insist that applying New York's gun-related public nuisance statute here would allow the predicate exception to swallow PLCAA's general rule. *See, e.g.*, Defs. Mem. at 1-2; Montana et al. Br. at 8. But the Second Circuit has already rejected the proposition that litigants are categorically barred from bringing actions against gun industry participants based on violations of General Business Law §§ 898-a to 898-e. *See National Shooting Sports Found.*, 144 F.4th at 111. And Congress has expressly limited the predicate exception to suits for violations of state law that are committed "knowingly" and that are the "proximate cause of the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii). It is up to Congress, and not to the federal courts, to determine whether to add further restrictions on either the scope of the qualifying predicate statutes or the suits that may be brought under the predicate exception. In PLCAA, Congress expressed the

9

view that state *courts* were improperly expanding the common law in a manner that was not "bona fide," *id.* § 7901(a)(7), and in the predicate exception Congress chose to preserve and not to restrict the ability of state *legislatures* to expand the common law, *id.* § 7903(5)(A)(iii).

There is no indication in PLCAA's text or legislative history that Congress intended to prevent States from enacting new statutes that require firearms manufacturers and sellers to take steps to reduce the risk that their product will be later misused. The statutory provision at issue here, General Business Law § 898-b(2), does exactly that. The statute requires that gun industry participants "establish and utilize reasonable controls and procedures to prevent [their] qualified products from being possessed, used, marketed or sold unlawfully in New York state." General Business Law § 898-b(2). The statute provides examples of reasonable controls, such as: "instituting screening, security, inventory and other business practices to prevent thefts"; establishing practices to guard against "sales of qualified products to straw purchasers, traffickers, persons prohibited from possessing firearms under state or federal law, or persons at risk of injuring themselves or others"; and "preventing deceptive acts and practices and false advertising" under New York's consumer protection laws. *Id.* § 898-a(2). The statute thus regulates gun industry members' own conduct in the sale and marketing of firearms, which falls comfortably within the type of state regulatory measures that Congress intended to preserve. See *supra* at 6-7. It does not impose duties of care or liability arising *only* from the misconduct of other persons, the types of actions that Congress intended to bar, *see* 15 U.S.C. § 7901(a)(6), (b)(1).

In sum, and as the Second Circuit has already recognized in *National Shooting Sports Foundation*, Congress did not express a clear and manifest purpose to bar States from exercising their police powers to enact common-sense regulatory measures, such as requiring gun industry participants to implement appropriate controls and procedures to prevent the misuse of their products.

10

*See* 144 F.4th at 109-11. Congress did not, for example, provide that PLCAA's exceptions were limited to causes of action that existed at the time that PLCAA was enacted in 2005. *Compare* 15 U.S.C. § 7903(5)(A)(iii) (PLCAA exception for violations of "a State or Federal statute applicable to the sale or marketing" of firearms), *with* 47 U.S.C. § 414 (federal Communications Act preserving "the remedies *now existing* at common law or by statute" (emphasis added)). Nor is there any textual indication that Congress intended to limit PLCAA's exceptions to then-existing causes of action. Accordingly, this Court should reject the contention advanced by defendants and their amici that PLCAA bestows broad and sweeping immunity on gun industry participants from liability under state statutes, like General Business Law § 898-b(2), that were enacted pursuant to the States' police powers to regulate gun industry participants.

## CONCLUSION

For the foregoing reasons, this Court should reject the broad reading of PLCAA's bar on actions against gun industry participants advanced by defendants and their amici.

Dated: New York, New York
       May 29, 2026

Respectfully submitted,

LETITIA JAMES
  *Attorney General*
  *State of New York*

By:      <u>  */s/ Mark S. Grube*  </u>
       MARK S. GRUBE
       Senior Assistant Solicitor General

       28 Liberty Street
       New York, New York 10005
       (212) 416-8028

BARBARA D. UNDERWOOD
  *Solicitor General*
ESTER MURDUKHAYEVA
  *Deputy Solicitor General*
MARK S. GRUBE
  *Senior Assistant Solicitor General*
      *of Counsel*

*(Counsel listing continues on next page.)*

ROB BONTA
 *Attorney General*
 *State of California*
1300 I Street
Sacramento, CA 95814

PHILIP J. WEISER
 *Attorney General*
 *State of Colorado*
1300 Broadway 10th Fl.
Denver, CO 80203

WILLIAM TONG
 *Attorney General*
 *State of Connecticut*
165 Capitol Avenue
Hartford, CT 0610

KATHLEEN JENNINGS
 *Attorney General*
 *State of Delaware*
820 N. French Street
Wilmington, DE 19801

ANNE E. LOPEZ
 *Attorney General*
 *State of Hawai'i*
425 Queen Street
Honolulu, HI 96813

KWAME RAOUL
 *Attorney General*
 *State of Illinois*
115 S. LaSalle Street
Chicago, IL 60603

AARON M. FREY
 *Attorney General*
 *State of Maine*
6 State House Station
Augusta, ME 04333

ANTHONY G. BROWN
 *Attorney General*
 *State of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

ANDREA JOY CAMPBELL
 *Attorney General*
 *Commonwealth of*
 *Massachusetts*
One Ashburton Place
Boston, MA 02108

DANA NESSEL
 *Attorney General*
 *State of Michigan*
P.O. Box 30212
Lansing, MI 48909

KEITH ELLISON
 *Attorney General*
 *State of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther
King Jr. Blvd.
St. Paul, MN 55155

AARON D. FORD
 *Attorney General*
 *State of Nevada*
100 North Carson Street
Carson City, NV 89701

13

RAÚL TORREZ
  *Attorney General*
  *State of New Mexico*
408 Galisteo Street
Santa Fe, NM 87501

CHARITY R. CLARK
  *Attorney General*
  *State of Vermont*
109 State Street
Montpelier, VT 05609

DAN RAYFIELD
  *Attorney General*
  *State of Oregon*
1162 Court Street N.E.
Salem, OR 97301

JAY JONES
  *Attorney General*
  *Commonwealth of Virginia*
202 North Ninth Street
Richmond, VA 23219

PETER F. NERONHA
  *Attorney General*
  *State of Rhode Island*
150 South Main Street
Providence, RI 02903

NICHOLAS W. BROWN
  *Attorney General*
  *State of Washington*
P.O. Box 40100
Olympia, WA 98504

14

**CERTIFICATE OF COMPLIANCE**

Mark S. Grube certifies that the foregoing document contains 3,397 words and complies with the limitations of Local Rule 7.1(c)

          */s/ Mark S. Grube*